# COURT OF OYER AND TERMINER,

THE STATE *v.* CHARLES ROBINSON.

*Murder—New Trial.*

Where the prisoner waives his right to put the juror upon his *voir dire* and ask him whether he had formed and expressed an opinion of his guilt or innocence, he cannot afterwards make use of the fact that the juror had formed and expressed an opinion against him as a ground for a new trial; especially without evidence that the verdict of the juror, or of his associates, was influenced by such expression, or without dissatisfaction on the part of the Court with the verdict itself.

(*New Castle, November, 1885.*)

INDICTMENT for rape, conviction and motion for a new trial.

*Walter Bacon,* for the prisoner.

*John Biggs,* Attorney General, for the State.

COMEGYS, C. J.

In the argument of the prisoner's counsel in support of his reasons for a new trial, he stated that his chief reliance was upon the validity of the first of them ; in fact, the whole scope of it was confined almost entirely to the consideration of it.

Before treating of the reasons, I think it proper to remark that the books from which we derive our knowledge of the unwritten law governing new trials before courts and juries—I mean the English treatises and reports with respect to common law proceedings—not only contain no example of a new trial in a capital case, but they are emphatic that none can be granted. The practice in England is now, as it always has been—when the prisoner is

wrongfully convicted, in the opinion of the Court, by reason of some fact or circumstance which, if the trial had been a civil one would have been ground for a new trial—to respite the sentence in order to give time for application for pardon, which the Court under such a state of things always recommends. As the usage of the Crown is to act favorably on such recommendation, pardon may be said to follow thereon, of course. In cases called criminal in some of the authorities, new trials are granted as in civil cases; but such so-called criminal cases are cases not capital. This distinction will be found expressed in 1 Leving, page 9. And an examination of this authority, and that of Sir Thomas Jones' Reports, page 355, will also show that the remark of the learned Justice Blackstone in the 4th Vol. of his Commentaries at page 455, when treating of the subject of verdicts by juries—that "in many instances where contrary to evidence the jury have found the prisoner guilty, their verdict hath been mercifully set aside and a new trial granted by the Court of Kings Bench"—applies to cases alone criminal in the sense I have mentioned; that is, not capital. The evidence of this is, that this citation in support of his language, is the very cases referred to in Leving and Jones.

The subject of granting a new trial in a capital case was much discussed by counsel and Court in the case of *Commonwealth v. Green*, 17 Mass., page 515, *et. seq.* It was admitted in that case, on all hands, that in England there was no warrant for a new trial in a capital case, but the Court felt itself warranted in deciding for one in that case, relying for authority upon two decisions, one the the case of *The United States v. Fries*, in 3 *Dallas*, 515, and the other that of *The State v. Hopkins*, 1 *Bay.*, 372. The first of these was, undoubtedly, a capital case, and was tried in the Circuit Court of the United States for the Pennsylvania District before Justice Iredell and Judge Peters. The Court were divided upon the question, the former Judge being in favor of the motion for new trial, and the latter against it; he, however, yielded to avoid a division. The Court were, perhaps, influenced somewhat in

OPINION OF COURT.

granting the motion for a new trial by the concession of Rawle, the District Attorney, who, evidently, was misled by the supposition, as a subsequent paragraph of his argument shows, that what was ground for a new trial in an ordinary jury case, was ground in a capital case. The case from Bay was a conviction on a count in an indictment for knowingly uttering a forged paper. This would seem not to have been a capital case; and the report is silent whether it was or not; it is, however, treated as capital in the case under consideration.

The other cases which I have examined—those submitted in the briefs of counsel—have either the authority of a statute warranting a new trial, or some practice which has prevailed to authorize the grant of a motion. All, I think, but one, are supported by statutory authority; the grant of which is, at least, negative testimony that it was necessary, to give the Court power.

A search among our own records has been made for a precedent for the present motion. There is no sign of any proceeding like the present until the year 1857, in the case of the State, an indictment for murder, Patrick Shay. At a session of the Court in November, 1859, a motion for new trial was made in the *State v. Turner*, an indictment for rape; also at the same term in the case against John Bowen, for murder. At the November session, 1862, similar motion was made in the indictment for rape against Abel Riggs. Fifteen years afterwards in a like indictment against Samuel Chambers and George Collins, in May, 1880, in the case of the *State v. Wm. Neal*, for rape; in September, 1881, in the indictment for murder against Jeremiah Harrigan;* and two years afterward in the case against List and List, an indictment for murder. In all, there are eight cases, two of which are reported; and all of them arose in New Castle County. In the reported cases—those against Bowen and Riggs—no argument was made with reference to the power of the Court to grant a new trial in a capital case. There is a total absence of any evidence that a motion for a new

* Page 369.

trial in a capital case was ever made in Kent or Sussex, except in one case in Kent in 1860. In none of the above cases did the motion prevail.

But, for the sake of the discussion, treating the question of the power of the Court to grant a new trial in a capital case as one not to stand in the way of the motion we are considering, is there any ground shown that would justify this Court in setting aside the verdict of the jury and granting the prisoner a new trial? In considering that question, we should remember the language of Chief Justice Wilmot in the case of *Leeman v. Allen,* 2 *Wils.,* 160 —"Courts should be very cautious how they overthrow verdicts that have been given by twelve men on their oaths."

The first ground, and that upon which the counsel said he chiefly relied, is that John T. Alfree, one of the jurors who composed the panel that tried the prisoner, had formed and expressed an opinion against him before the trial came on; and an affidavit of the person with whom he spoke, is shown in support of it. It might be sufficient to answer to this reason, that the prisoner had the right by law to put the witness upon his *voir dire* and ask him whether he had formed and expressed any opinion of his guilt or innocence, but he waived it expressly. There is abundant authority that where a prisoner waives such a test, he cannot afterwards make use of the fact that the juror had formed and expressed an opinion against him, as a ground for new trial. But allowing that he could, for the sake of the discussion, the evidence given by the juror, when examined upon the matter, does not support the reason in question. He stated, upon his oath that what was sworn to as having been said by him, was substantially correct; but he declared that though he *expressed* the hostile opinion alleged, he had not, in fact, *formed* any opinion whatever of the prisoner's guilt or innocence; and that the expression he made was with a view to being challenged by the prisoner's counsel if called; and stated that upon the trial of Davis for murder where he was a juror, he and several others resolved upon the plan of expressing themselves hostile to

the prisoner in this case, for the same purpose. He was then asked by a member of the Court, whether he was influenced, in uniting with the others in a verdict of guilty by what he had said, and he replied that he was not. If the juror had been asked, whether he had formed and expressed an opinion with reference to the guilt or innocence of the prisoner, and had answered as he did at the time he was examined before the Court upon the motion for a new trial, he would not have been put aside; so that if he had not then been challenged by the prisoner, there would, upon conviction, have been quite as good a reason for the motion as there is now. There was a waiver of the question allowed by law with a view of testing the indifference, or absence of pre-judgment on the part of the juror; and if we were to open the case again to enable the prisoner to repair his omission, we should be going further than we believe any Court has gone under like, or analogous circumstances. What, acting upon feelings of pure humanity, a Court might do, if in case of waiver of the usual question the prisoner afterwards ascertained and was ready to prove that one of the jurors who convicted him had, previous to the trial, formed and expressed an opinion hostile to his innocence, I cannot, of course, say; but I do not think any tribunal, having in view the rules governing the selection of jurors in capital cases, would grant a motion for a new trial upon such facts as exist in this case with reference to the expression by Alfree, and the declaration he made on oath with respect to it. What this Court might have done if the facts had been shown upon his *voir dire*, it is not for me to conjecture; but as he was allowed to be sworn, without the usual question which the law has wisely authorized a prisoner's counsel to put. I do not see how we would be, in any respect, or by any precedent, justified in granting a new trial, and especially without evidence that the finding of the juror, or of his associates, was influenced by such expression, or without dissatisfaction on the part of the Court, with the verdict itself.

The sentiment of the bench of this country is against new

trials founded upon objection that might have been developed if the question allowed for that purpose had not been waived. When they have been granted notwithstanding such waiver, it has been where there was dissatisfaction by the Court with the verdict, or ground for belief that the objectionable juror was influenced by what he had said before the trial. There is no proof of any kind here that Alfree was influenced in his verdict by the opinion he expressed to Schurz; in fact he asserted, when the question was put to him, that it had no effect whatever upon his mind. In the case of *Mitchum v. The State,* 11 Geo., 615, an application for a new trial, where it appeared to the Court below and is mentioned at the foot of the reasons, that the foreman had said to the defendant's counsel before the trial that "he had better not take him as a juror as he would hang the prisoner," the Supreme Court treated the statement as a device to avoid service on the jury.

No evidence was given with respect to the second and third assigned reasons.

All that is alleged, afterwards, that is in reason four and its subdivisions, was matter for the jurys, and not matter for the Court; and, therefore, is not to be considered as in any sense relevant to the application for a new trial. It was their duty to consider and pass upon the evidence before them, the statements of the witnesses, their value when discrepant, their credibility, and the weight to be given to their testimony under all the circumstances. The character of none of them for veracity was directly impeached, though that for chastity of the alleged victim of the prisoner's assault, was impugned by two witnesses. In answer. however to them, many more, having apparently equal means of information, testified that they had never heard any thing affecting her reputation for virtue—which, in view of the law that every one is presumed *prima facie* to have a good character, was sufficient to justify the jury in giving credit to her testimony.

The motion for a new trial is therefore refused.